UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PROFESSIONAL INVESTIGATING &
CONSULTING AGENCY, INC.,**

        **Plaintiff,**                    Case No. 2:11-cv-01025
                                            JUDGE GREGORY L. FROST
        v.                                  Magistrate Judge Elizabeth P. Deavers

**DAVID SUZUKI, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following motions and corresponding briefs: (1) Defendants David Suzuki and Suzuki Reconnaissance Advisors Limited's ("SRA") motion for summary judgment on Plaintiffs' claims (ECF No. 55), Plaintiff's memorandum in opposition (ECF No. 59), and Defendants' reply memorandum (ECF No. 60); (2) Defendants' motion for summary judgment on their first counterclaim (ECF No. 61), Plaintiff's memorandum in opposition (ECF No. 64), and Defendants' reply memorandum (ECF No. 66); and (3) Plaintiff's motion to withdraw admissions (ECF No. 63), and Defendants' memorandum in opposition (ECF No. 65).

For the reasons that follow, the Court **GRANTS** Defendants' first motion for summary judgment (ECF No. 55) and enters judgment in Defendants' favor on each of Plaintiffs' claims for relief. The Court **DENIES** Defendants' motion for summary judgment on their counterclaim (ECF No. 61) and **GRANTS** Plaintiff's motion to withdraw admissions (ECF No. 63).

1

I.  BACKGROUND

A. **Plaintiff's Claims for Relief**

Plaintiff's allegations in this lawsuit are set forth in detail in the Court's August 21, 2014 Opinion and Order.  The allegations stem from a Joint Marketing, Licensing, and Services Agreement between the parties (the "Agreement").

Before addressing the factual issues in this case, the Court first clears up some confusion in the briefing regarding the claims at issue.  The source of confusion is the fact that the Amended Complaint does not clearly identify the claims Plaintiff is asserting.  Plaintiff inserted the labels "Count One" through "Count Three" seemingly at random throughout its allegations in the Amended Complaint, and there are no clearly identifiable claims for relief in each of the "Counts."  Making things more confusing, Plaintiff now argues that some of the "Counts" contain more than one claim for relief.

Recognizing that filings must be construed by their substantive content and not by their labels, in its August 21, 2014 Opinion and Order, the Court identified two claims for relief in Plaintiff's Amended Complaint:

- A breach of contract claim for soliciting Plaintiff's clients and disclosing Plaintiff's confidential information in violation of the Agreement, for which Plaintiff seeks injunctive relief and monetary damages; and

- A claim for wrongful interference with business relations.

(ECF No. 51.)  In the briefs, however, the parties do not address the second claim, assuming instead that that the wrongful interference claim is part of the breach of contract claim.  The Court therefore will address only the breach of contract claim.

There are two contractual provisions at issue in this claim.  First, the Agreement states that, during the term of the Agreement and for two years after the termination thereof, neither

party will directly or indirectly solicit any client introduced to it through the joint venture.  (ECF No. 10-1, at 11 ¶ 7.3.)  Plaintiff alleges that Defendants violated the Agreement by soliciting Plaintiff's Asian clients within the two-year window following the Agreement's termination.

The second contractual provision at issue involves "Confidential and Proprietary Information and Trade Secrets."  (*Id*. at 2 ¶ 1.4.)  The Agreement states that such information "shall be kept confidential" by both parties and "shall be disclosed only upon the prior written consent of the Disclosing Party or upon such terms as may be agreed upon in writing by the Parties."  (*Id*. at 10–11 ¶ 7.1).  The Agreement also states: "Upon termination of this Agreement for any reason or no reason, the Parties hereto shall . . . cease any and all use of the other Party's Marks, Content, Confidential and Proprietary Information and Trade Secret Information."  (*Id*. at 5–6 ¶ 3.6.)  Plaintiff alleges that Defendants violated and continue to violate the Agreement by using and disclosing Plaintiff's confidential information.

### B. Defendants' Counterclaims

Defendants assert three counterclaims against Plaintiff.  In the first counterclaim, Defendants assert that "SRA performed services under the Agreement for which [Plaintiff] agreed to [but did not] pay SRA."  (ECF No. 51, at PAGEID # 302.)  Presumably, this claim refers to § 5.1 of the Agreement, which provides that Plaintiff "will pay SRA a fee for services rendered under this Agreement" as set forth in certain "Project Assignments."  (ECF No. 10-1, at PAGEID # 61, 64.)  Defendants also assert claims for promissory estoppel and tortious interference with business relations against Plaintiff.

Plaintiff answered the counterclaim and denied many of Defendants' allegations.  Specifically, Plaintiff denied that it breached the Agreement by failing to pay SRA for its services.

### C. Procedural Posture

This case got off to a slow start because Defendant evaded service for almost two years. Once Plaintiff perfected service, on May 9, 2014, the Court entered a Preliminary Pretrial Order ("PPO") and a Scheduling Order. The Scheduling Order sets a final pretrial conference date of April 1, 2015 and a bench trial date of May 11, 2015. (ECF No. 44.)

The PPO states: "[a]ll discovery must be completed by September 30, 2014." (ECF No. 42, at 3.) The PPO then states: "The parties are advised that the discovery completion date requires that discovery requests be made sufficiently in advance to permit timely response by that date." (*Id*.) Accordingly, pursuant to the plain language of the PPO, the parties were required to serve any discovery requests on or before August 30, 2014 to allow the opposing party time to respond by September 30, 2014. *See, e.g.*, Fed. R. Civ. P. 33(b)(2) (stating that a party has thirty days to respond to interrogatories); Fed. R. Civ. P. 34(b)(2)(A) (stating that a party has thirty days to respond to requests for production). The PPO specifically noted that the Court was placing the parties on an expedited discovery plan given the age of this case.

The PPO also set a dispositive motion date of October 30, 2014. The PPO clearly contemplated that discovery would be served before August 30, 2014, that responses would be received before September 30, 2014, and that the parties would have the discovery responses available to them to file any dispositive motions on or before October 30, 2014. The parties did not request an extension of any of the dates set forth in the PPO or the Scheduling Order.

On September 30, 2014—the discovery cut-off date—Defendant served untimely discovery requests on Plaintiff. Included in those requests are four Requests for Admission ("RFAs"), one of which states: "Admit that there is presently $40,737.47 in outstanding accounts payable by you to [SRA]." (ECF No. 61-1, at PAGEID # 364.)

4

Plaintiff did not respond to the RFAs. Plaintiff similarly did not respond to any of Defendants' discovery requests. Defendants' counsel raised the issue with Plaintiff's counsel in December of 2014; however, Plaintiff did not provide the outstanding discovery.

Meanwhile, on October 30, 2014 (the dispositive motion deadline), Defendants filed a motion for summary judgment on Plaintiff's claims. Defendants did not submit any evidence in support of their motion other than a declaration from Defendant Suzuki.

Plaintiff responded to Defendants' motion on December 5, 2014. It submitted two affidavits from its officers, along with a press release announcing the joint partnership between it and SRA, in support of its motion. Plaintiff similarly did not cite any deposition testimony or discovery responses in its brief.

By early January of 2015, Plaintiff had not responded to Defendants' untimely discovery requests. As such, on January 13, 2015—despite the fact that the dispositive motion deadline had passed several months earlier—Defendants filed another motion for summary judgment. Defendants did not seek leave to file their motion outside of the dispositive motion deadline.

In this second motion, Defendants seek summary judgment on their breach of contract counterclaim based on the RFAs. Defendants argue that Plaintiff's failure to respond to the RFAs within thirty days deems those RFAs admitted pursuant to Federal Rule of Civil Procedure 36(a)(2). Accordingly, Defendant argues, Plaintiff admits to owing SRA $40,737.47 under the Agreement such that Defendants are entitled to summary judgment on their breach of contract counterclaim. Defendants offer no explanation for the fact that they served their RFAs on the discovery cut-off date and therefore left no time to pursue discovery based on Plaintiff's responses. Defendants similarly do not explain why they failed to serve their discovery requests before August 30, 2014 as the PPO required.

5

Plaintiff responded to Defendants' motion but did not raise the issue of timeliness. Apparently conceding that the RFAs should be deemed admitted pursuant to Rule 36(a)(2), Plaintiff filed a motion to withdraw admissions. Plaintiff does not explain why it did not respond to the RFAs or to any of Defendants' discovery requests. Instead, Plaintiff argues that the Court should allow it to withdraw the admissions. Plaintiff does not attach discovery responses or otherwise seek permission to provide responses to Defendants' outstanding discovery. Plaintiff merely states in the body of its brief that it denies two of the outstanding RFAs.

As a result of the foregoing, the posture of this case is disturbing. The final pretrial conference is three weeks away, yet the parties do not appear to have conducted any discovery whatsoever. Both parties' apparent inattention to this case raises the issue of why they are still pursuing it. Nevertheless, the Court will consider the three pending motions.

## II. ANALYSIS

### A. Standard of Review – Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475

6

U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251–52).

### B. Defendants' First Motion for Summary Judgment

#### 1. Breach of Contract

As stated above, Defendants submitted a declaration of Mr. Suzuki in support of their motion for summary judgment.  Mr. Suzuki's declaration states that neither he nor SRA disclosed or misappropriated any of the confidential information they may have learned from Plaintiff under the Agreement.  (ECF No. 55-1, at PAGEID # 319.)  Mr. Suzuki further states that neither he nor SRA did business with any company with whom the parties had previously done business under the Agreement.  (*Id.*)  Mr. Suzuki specifically addresses one prior joint client, ABB, and asserts that Defendants "were involved in one matter that involved [ABB] . . . but we were retained in that matter not by ABB but by a vendor that had a payment dispute with ABB.  We were hired by the vendor to collect funds from ABB."  (*Id.* at PAGEID # 320.)

Plaintiff fails to rebut that evidence and demonstrate an issue of fact on the breach of contract claim.  Neither of Plaintiff's affidavits addresses the issue of whether Defendants used or disclosed Plaintiff's confidential information and/or solicited Plaintiff's clients.  The first affidavit states that Plaintiff stopped getting work from ABB in the Asian Pacific region after Defendants terminated the Agreement, but that fact alone does not support a finding that

Defendants solicited ABB in violation of the Agreement.  (ECF No. 59-3.)  The second affidavit states that ABB was a client developed solely by Plaintiff, but that fact again fails to support a finding that Defendants breached the Agreement.  (ECF No. 59-2.)  A reasonable jury could not conclude from this evidence that Defendants breached the Agreement by soliciting Plaintiff's clients and/or by disclosing confidential information.

The only other evidence Plaintiff offers is a press release dated June 21, 2009 announcing the partnership between Plaintiff and SRA.  The Court finds the press release irrelevant to the disputed issues in this case.

Accordingly, having found no evidence from which a reasonable jury could conclude that Defendants breached the Agreement, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

      2.  *Alleged Loan*

In its memorandum in response to Defendants' motion, Plaintiff raises the issue of money it purportedly loaned to Defendants.  Plaintiff suggests that it "loaned substantial monies to Defendant SRA to be repaid through the course of their contractual relationship under the agreement.  When Defendant's [sic] terminated the agreement, no payments were made toward that debt."  (ECF No. 59, at PAGEID # 329.)

To the extent the Agreement is the basis for this claim, Plaintiff's argument fails.  The Agreement does not mention any such payments or otherwise obligate Defendants to repay a loan.  *See* ECF No. 10-1.

To the extent Plaintiff is attempting to pursue a separate breach of contract claim to collect the aforementioned debt, Plaintiff failed to provide fair notice of any such claim.  In the Amended Complaint, Plaintiff alleged that Defendants violated the Agreement and caused it to

8

suffer substantial costs, including the loss of "retainers and advances" it provided to Defendants "pursuant to the Agreement." (ECF No. 10, at PAGEID # 58.) But, as stated above, the Agreement does not mention a loan payment from Plaintiff to Defendants. It is only now, when this case has reached the summary judgment stage, that Plaintiff clarifies that it is pursuing a debt under a separate contract in which Plaintiff allegedly agreed to loan money to SRA to cover certain salary requirements for SRA's employees in return for SRA agreeing to repay the loan or deduct the loan from its purchase price if Plaintiff decided to acquire it. Such a claim is not properly before the Court because Plaintiff failed to clearly assert it in the Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Moreover, even if the Amended Complaint could be read to provide fair notice of such a claim, Plaintiff asserts that SRA was obligated to repay the loan "when SRA's finances improved." (ECF No. 59-2, at PAGEID # 334.) Plaintiff provides no evidence of SRA's past or current financial state. Accordingly, there is no evidence that SRA is even in breach of this newly-disclosed agreement, if any such agreement exists. Plaintiff therefore fails to provide evidence from which a reasonable jury could conclude that Defendants breached a loan agreement. To the extent any such claim is at issue in this lawsuit, Defendants are entitled to summary judgment on that claim.

### 3. Tortious Misappropriation of Trade Secrets

In its memorandum in opposition to Defendants' motion, Plaintiff attempts to add another claim: that of tortious misappropriation of trade secrets. Presumably, Plaintiff seeks to add this claim to defeat Defendants' argument that the contractual provision in which the parties agreed

not to disclose confidential information is limited to a period of two years after termination of the Agreement.

Ultimately, the parties' arguments on this point are of no consequence. Setting aside the issue of whether Defendants could have "misappropriated" information they had a contractual right to obtain, the Court finds no evidence that Defendants used or disclosed any of Plaintiff's confidential information. As stated above, Plaintiff failed to provide evidence from which a reasonable jury could conclude that Defendants engaged in any misconduct with respect to Plaintiff's confidential information. Accordingly, to the extent there is a trade secrets claim at issue in this lawsuit, Defendants are entitled to summary judgment on that claim.

### 4. Injunctive Relief

The parties' final arguments involve Plaintiff's request for injunctive relief.[1] Because an injunction "is not a free standing claim" but "is a form of relief that can be requested," *Velez v. Cuyahoga Met. Housing Auth.*, No. 1:13CV1022, 2014 WL 847406, at *5 (N.D. Ohio Mar. 3, 2014) (quoting *Lewis v. Ceralvo Holdings, LLC*, 4:11–cv–00055–JHM, 2012 WL 32607 (W.D.Ky. Jan. 6, 2012)), and because Plaintiff failed to provide evidence showing that it is entitled to relief on any of its claims, there is no basis on which to grant injunctive relief.

Having addressed the parties' arguments and finding no evidence that Plaintiff is entitled to relief on any of its claims, the Court concludes that summary judgment is proper. The Court therefore **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims for relief. Only Defendants' counterclaims remain in this lawsuit.

---

[1] The Court reiterates its statement from its August 21, 2014 Opinion and Order that, although Plaintiff purports to seek a preliminary injunction, its request is procedurally flawed and therefore was never properly before the Court. (ECF No. 51, at PAGEID # 291.)

### C. Plaintiff's Motion to Withdraw Admissions (ECF No. 63) and Defendants' Second Motion for Summary Judgment (ECF No. 61)

As stated above, Plaintiff's motion to withdraw admissions implicitly concedes that its failure to respond to the RFAs within thirty days renders those RFAs admitted under Rule 36(a)(2). *See* Fed. R. Civ. P. 36(a)(2) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ."); Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). The Court therefore offers no opinion on whether Rule 36(a)(2) applies to requests for admission served after the discovery deadline set forth in the PPO. The issue for the Court is whether Plaintiff should be permitted to withdraw its admissions under Rule 36(b).

"A district court has considerable discretion over whether to permit withdrawal or amendment of admissions" under Rule 36(b). *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (quoting *Am. Auto Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991)). Pursuant to Rule 36(b), "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The first prong of the test is satisfied "when upholding the admission would practically eliminate any presentation on the merits of the case." *Riley v. Kurtz*, 194 F.3d 1313, *3 (6th Cir. 1999) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). The non-movant bears the burden of proof on the second prong, which "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Kerry Steel, Inc.*, 106 F.3d at 154 (quoting *Am. Auto*, 930 F.2d at 1120); *see also Riley*, 194 F.3d at *3. Courts have specifically concluded that the preparation

of a summary judgment motion in reliance upon default admissions does not constitute prejudice under Rule 36(b). *In re Smith Road Furniture, Inc*., 304 B.R. 790, 792 (S.D. Bankr. 2003) (citing *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) and *In re Guardian Trust Company*, 260 B.R. 404, 411 (S.D. Miss. 2000)).

RFA No. 1, "Admit that there is presently $40,737.47 in outstanding accounts payable by you to Suzuki," (ECF No. 61-1, at 11), is the only request relevant to Defendants' counterclaims. Plaintiff's admission to that request is the only admission that survives the first prong of the Rule 36(b) test. The issue therefore becomes whether Defendants can demonstrate prejudice if the Court allows Plaintiff to withdraw that admission.

Defendants make two arguments in support of their position, neither of which is compelling. First, Defendants argue that withdrawal would create special difficulties because it would foreclose the opportunity for discovery. But, as stated above, Defendants chose to serve their RFAs on the last day of the discovery period. Defendants therefore would have been foreclosed from pursuing discovery related to the RFAs regardless of whether Plaintiff objected to them or not. That Defendants now are faced with a rapidly-approaching trial date and no discovery is a predicament of their own making.

Defendants next argue that they justifiably relied on Plaintiff's admissions for over two months. Although that may be true, Defendants ignore the fact that the dispositive motion deadline passed on October 30, 2014—over two months before they filed their second summary judgment motion. Had Defendants timely served their RFAs with the intent of relying on the corresponding admissions in a timely dispositive motion, this issue could have been adjudicated with ample time to adjust litigation strategies before trial. The Court acknowledges that Plaintiff

12

should have moved to withdraw its admissions much sooner; however, its failure to do so does not satisfy Defendants' burden of proof on this issue.

Other facts similarly weigh in Plaintiff's favor. First, Plaintiff denied the allegation at issue in its answer and therefore put Defendants on notice of a dispute. Second, this case is still two months away from trial such that Defendants have time to adjust litigation strategies. *Cf. Riley*, 194 F.3d at *3 (denying a motion to amend admissions made in the middle of trial but stating, "[h]ad the motion been made before trial, we would be faced with a completely different situation"). And finally, although the Court acknowledges that Defendants face a tight timeframe in preparing for trial, the Court already informed the parties that it was placing this case on an expedited schedule given Defendants' attempts to evade service for two years. Defendants therefore fail to persuade the Court that withdrawal would prejudice them in maintaining their counterclaim on the merits.

Plaintiff's carelessness in not responding to the RFAs and failing to quickly request withdrawal is not admirable. But Defendants' carelessness in failing to timely serve discovery requests is the true cause of the issues they now characterize as prejudice. Because the Court is not persuaded that withdrawal will prejudice Defendants within the meaning of Rule 36(b), the Court **GRANTS** Plaintiff's motion to withdraw admissions. And because the admissions were the sole basis of Defendants' second motion for summary judgment, the Court **DENIES** the same. Finally, given the delays discussed above and Defendants' role in the posture of this litigation, the Court similarly denies Defendants' request for compensation for expenses incurred in filing the second motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims for relief, (ECF No. 55), **DENIES** Defendants' motion for summary judgment on their first counterclaim (ECF No. 61), and **GRANTS** Plaintiff's motion to withdraw admissions (ECF No. 63).  Defendants' counterclaims remain pending in this action.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**